UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 07-20366-BC
        Honorable Thomas L. Ludington

TERRY DRAPER WILLIAMS,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Presently before the Court is Defendant Terry Williams' ("Defendant") motion to suppress evidence seized during a police search of a leased property located at 3109 Ray Street, Saginaw, Michigan. Defendant contends that the warrant authorizing the search did not establish probable cause for the search, and that the good faith exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897, 905 (1984), does not apply. The Court held oral arguments on Defendant's motion on February 25, 2008.

The Court will **GRANT** Defendant's motion to suppress. The informant's statements, absent independent corroboration of the factual assertions or of the informant's veracity by law enforcement, did not establish probable cause for the search. Further, law enforcement's failure to corroborate the informant's statements or his veracity was objectively unreasonable, so the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), does not apply.

I

Defendant was indicted on August 13, 2007 for the following offenses: (1) conspiracy to distribute heroin in violation of 21 U.S.C. § 846; (2) possession of heroin with the intent to distribute

in violation of 21 U.S.C. § 841(a)(1); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and (4) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On May 24, 2007, Saginaw County Sheriffs arrested Defendant after searching his residence at 3109 Ray Street, pursuant to a search warrant issued by a state court on the same day. In his motion, Defendant concedes that he leased the premises in explaining that he "otherwise enjoyed an expectation of privacy in the premises." Dkt. # 16. The search yielded an unspecified amount of heroin, a firearm, and Defendant's identification documents.

Statements furnished by Alberto Cuellar, Jr. ("Cuellar") formed the factual basis for a Saginaw County Sheriff Detective's ("Detective") request for a search warrant. Earlier that day on May 24, 2007, officers executed a different search warrant at 320 N. Bond Street in Saginaw, Michigan. After arresting Cuellar for heroin located in the residence, Cuellar provided the Detective information regarding Defendant. Based on Cuellar's information, the Detective submitted the following affidavit in support of the search warrant for Defendant's residence:

> B) On 24 May 2007, the Sheriff's Department executed a search warrant at 320 N. Bond, Saginaw. Arrested at that location was Alberto Cuellar Jr. Among the items seized from the location were 15 individual packages (consisting of cut-up lottery tickets) of heroin, a quantity of pills, and a drug ledger. At the time of the execution of the search warrant, Cuellar was observed sitting on the front porch of the residence and was in the process of "shooting up" a quantity of heroin in a needle.
>
> C) Subsequent to his arrest, Cuellar told me that he was a user of heroin and had been selling heroin for approximately two months from his current house. Cuellar identified his supplier as TERRY WILLIAMS. Cuellar also stated that to conduct his heroin sales business he would call WILLIAMS on the telephone and request a quantity of heroin and that shortly thereafter, WILLIAMS would have a "runner" come to Cuellar's house and deliver a quantity of individually prepackaged heroin. Cuellar also described two vehicles in which the "runners" would bring him heroin: a white colored Lincoln Towncar and a black Chevrolet S-10 Pickup truck. Cuellar also stated the heroin seized from his residence today had been delivered to him at about 7:00am this morning by the runner known to him as "EDDIE" who used the white Towncar. Cuellar also told me that he could call WILLIAMS on the telephone,

indicate that he was in the area and WILLIAMS would give him permission to stop by and pick up pre-packaged heroin himself. On today's date, Cuellar both described in detail the above described residence as WILLIAMS' residence and also physically identified it to investigators as he rode with them to the residence prior to obtaining this search warrant. While viewing that location prior to obtaining this search warrant, Det. Butcher saw both of the above described vehicles (noting that the S-10 appears to be dark green) parked in the driveway of the residence. Det. Butcher also saw three black males exit the residence, enter the Towncar and leave the area. I also saw an unidentified male standing on the roof of the above described residence when I conducted the identification drive by.

D) The information provided by Cuellar is based on his personal knowledge and observations and dealing with WILLIAMS and "runners" working for or with WILLIAMS.

* * *

I) I also know, based on my training and experience, that [persons involved in the obtaining, manufacture, processing, compounding, sale and or delivery of illegal substances] . . . routinely lie or provide false information to the police who may come into contact with them including false or partial information as to identity, residence, telephone number, vehicle ownership or use in an attempt to hide and protect their illegal drug enterprise and other persons associated with them in it.

Dkt. # 16-2 at 1-3.

Defendant advances two challenges to the warrant. Defendant contends that the affidavit does not establish a fair probability that evidence of a crime would be found at 3109 Ray Street. Defendant separately challenges the lack of information corroborating Cuellar's veracity (if not capacity) or information corroborating his factual assertions. On February 25, 2008, the Court heard oral arguments from counsel.

II

In *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983), the Supreme Court recognized that "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules" and adopted the

"totality of the circumstances" test. *Id.* An affidavit in support of a warrant must provide the magistrate with a substantial basis for determining the existence of probable cause. *Id.* at 239. With respect to a finding of probable cause based on the statements of an informant, the Sixth Circuit provided the following framework in *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002):

> "Rigid legal rules" should not be the guiding hand of probable cause determinations. *United States v. King*, 227 F.3d 732, 739 (6th Cir.2000). Instead, the totality of the circumstances test requires the issuing judge to "make a practical, common sense decision ... given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information." *Murphy*, 241 F.3d at 457 (*quoting Gates*, 462 U.S. at 238, 103 S.Ct. 2317). While veracity, reliability, and basis of knowledge are highly relevant in determining the value of an informant's report, these elements are not separate and independent requirements that are to be inflexibly exacted in every case. *Gates*, 462 U.S. at 230, 103 S.Ct. 2317. Rather, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. 2317 (citations omitted).

"'A grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant 'courts should not invalidate ... warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.'" *Gates*, 462 U.S. at 236 (*quoting United States v. Ventresca*, 380 U.S. 102, 108-09 (1965). Thus, a court should show "great deference" to a magistrate's probable cause determination. *Id.*

A valid search warrant must include a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (citations and internal quotations omitted). In *Laughton*, for example, police officers observed an informant make two controlled buys from the defendant at the defendant's residence. *Id.* at 746. Based on their observations and the informant's statements, an officer swore an affidavit in an application for a warrant to search the defendant's residence. *Id.* The affidavit contained information regarding a

confidential informant's narcotics purchases from the defendant, but did not state any information relating to the defendant's residence, such as that the officers observed the informant enter the defendant's residence for two narcotics purchases.

The Sixth Circuit concluded that, while the affidavit referred to the defendant's involvement in drug trafficking and sales, it lacked probable cause to support a search of his residence because it did not establish "any connection between the residence to be searched and the facts of criminal activity that the officer set out in the affidavit. That affidavit also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there." *Id.* The *Laughton* court noted that an affidavit that "contains only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge'" such that it is "lacking in indicia of probable cause" to be "barebones." *Id.* at 749 (*quoting United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1998). The court also noted that the affidavit did not contain the location of the controlled drug purchases, did not explicitly state that the informant bought narcotics from the defendant, or provide where the residence was located or when the purchases were made. *Id.* at 751. Though the officers possessed evidence connecting the alleged illegal activity to the place to be searched, the court found that the affidavit itself did not contain a "modicum of evidence" that demonstrated a connection with the alleged controlled substance sales to the defendant's residence. *Id*. at 749. Ultimately, the court found the warrant to be barebones, inasmuch it only contained the address of the residence, a statement regarding the officer's experience, and two "contextual allegations" against the defendant. *Id.* at 751.

Here, Defendant's primary challenge to the affidavit in the immediate matter is its nearly

complete reliance on Cuellar's recitation of facts with little corroboration of those facts and with no explanation of why Cuellar should objectively be viewed as a reliable informant. Defendant offers *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993) and *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) in support of his challenge.

In *Leake*, 998 F.2d at 1360, police received a tip from an anonymous informant that the defendant possessed a large quantity of marijuana in his basement. The informant told police that he had observed the illicit drugs while performing work as a tradesman at the residence. *Id.* at 1361. Along with the observation of marijuana, the informant provided the address of the resident. *Id.* He also stated that the plants resembled and had the odor of marijuana and that the residents appeared to be dealing the drug. *Id.* The officer that received the tip decided that the tip required confirmation, and he observed the residence for two hours on two consecutive nights. *Id.* Though the officer did not observe any unusual activity, his surveillance confirmed the address of the residence, the informant's physical description of the residence, and that the residence had a basement. *Id.* The officer also recorded the license plate numbers of the vehicles in the driveway and determined that one of the vehicles was registered to the defendant. *Id.* The officer presented these facts in his affidavit in support of a search warrant and acknowledged that his surveillance did not observe any "undue amount of traffic" at the address. *Id.*

The Sixth Circuit concluded that the affidavit failed to establish probable cause determining that the information "was not 'rich' in relevant detail" and that the officer's attempt to corroborate the information was "simply insufficient." *Id.* at 1365. First, the anonymous informant's details did not provide the dates that the drugs were observed, nor was there a description of future activity the officers could confirm. *Id.* The substance of the information contained in the affidavit, provided

by a wholly anonymous informant, did not demonstrate "indicia of the [anonymous informant's] reliability." *Id.* Next, the officer's limited attempt to corroborate the information was "equally important" to the court's conclusion that the affidavit did not establish probable cause. *Id.* Though the officer confirmed the address and the physical description, including the existence of a basement, he acknowledged that his surveillance did not reveal anything unusual. Despite the fact that the court acknowledged that information provided by a "citizen informant" is held to a "less stringent" standard of corroboration, *id.* at 1362, the court ultimately concluded that the officer merely confirmed innocuous facts and failed to invest sufficient effort "to verify important elements of the anonymous [informant's] information." *Id.* at 1365.

Similarly, the Sixth Circuit found the corroborative efforts of police inadequate in confirming the statements of an informant in *Weaver*, 99 F.3d at 1379-80. In that case, a known and previously reliable informant told police that he had learned from a third party that an unknown person may be selling marijuana on or near a residential street. *Id.* at 1375-76. The informant stated to the investigating officer that he would attempt to purchase marijuana. *Id.* at 1376. The officer provided the informant with money for the transaction, but did not conduct surveillance of the transaction. *Id.* Soon thereafter, the informant met with the officer and told him that he purchased marijuana from the defendant at the defendant's residence. *Id.* The informant also stated his belief that the defendant was harvesting marijuana at the residence, though he did not observe any indications of a growing operation. *Id.* The officer and the informant then drove past the residence, in order for the informant to identify the residence. *Id.* Additionally, the officer verified that the residence's utilities were registered in the defendant's name. The officer did not, however, take any further investigative efforts and did not have any prior knowledge connecting the defendant to drug

trafficking. *Id.* The officer's affidavit attempted to affirm the informant's credibility by stating that the informant had previously supplied reliable and accurate information regarding illegal activity and that the informant observed the alleged illegal activity in the past three days. *Id.* at 1375-76. The search revealed a quarter of an ounce of marijuana and firearms, but no other evidence of a distribution or grow operation. *Id.* at 1376.

The court acknowledged that when the hearsay statements of a reliable informant provide the factual basis for a showing of probable cause, the statements should meet the following requirements to : (1) provide an "explicit and detailed description of the wrongdoing . . . observed firsthand;" and (2) be corroborated "through the officer's independent investigative work . . ." *Id.* at 1377 (*quoting United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) (*citing United States v. Gates*, 462 U.S. 213, 234, 244 (1983))). Viewed under that standard, the affidavit did not establish probable cause because it did not contain any "underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own 'belief ' . . . " *Id.* at 1378. Moreover, the affidavit did not establish that the informant had provided information that lead to drug-related prosecutions. These deficiencies regarding a demonstration of the informant's past performance notwithstanding, the officer's failure to corroborate the informant's statements ultimately was determinative.

> More important, however, is that [the officer] possessed only [the informant's] tip linking [the defendant] to possible drug activities, yet undertook no substantive independent investigative actions to corroborate his informant's claims, such as surveillance of the [defendant's] residence for undue traffic or a second controlled purchase made with officers viewing. The discovery of the utilities account holder, by itself, is insignificant.

*Id.* Thus, the informant's statements failed to establish probable cause absent significant officer corroboration. *Id.*

III

Turning our attention to the search warrant in the instant matter, the affidavit, as the one in *Laughton*, identifies Defendant as a drug trafficker. Unlike the affidavit in *Laughton*, however, Cuellar does identify 3109 Ray Street as Defendant's residence and the fact that Cuellar had "pick[ed] up prepackaged heroin." While the affidavit does not explicitly say so, it is fair to presume from the language of the document that the Detective meant Cuellar picked up heroin from the residence at 3109 Ray Street. The Detective corroborated these facts by driving past the residence, noting the presence of two vehicles associated with Defendant at the residence, and the detail Cuellar had furnished about the exterior characteristics of the residence. Clearly absent from the affidavit is any temporal explanation of when Cuellar was most immediately present inside the residence, any recitation that Cuellar observed any drugs or any specific drug quantities, or any supporting factual information about the interior of Defendant's residence. Notwithstanding these deficiencies, the affidavit identifies the home as Defendant's residence and connects it to Defendant's drug trafficking. Though the affidavit is not robust in relevant facts, it can neither be fairly characterized as a "barebones" affidavit. The affidavit in *Laughton* was entirely void of a nexus between the defendant and the residence. Here, the instant affidavit relied upon Cuellar's statements to establish a nexus between 3109 Ray Street and drug trafficking. Thus, Cuellar's statements sufficiently connect the item to be seized and the place to be searched such that Defendant's reliance on *Laughton* is misplaced in the instant matter.

More problematic is the source of the Detective's information. Cuellar's identity, as the government emphasizes, was included in the affidavit. Nevertheless, he is not entitled to the same inference of veracity as the anonymous citizen in *Leake* or the known and previously reliable

informant in *Weaver*. Cuellar, by contrast, was a known heroin user and an acknowledged heroin distributor; nothing in the affidavit reflects any prior contact with law enforcement or his reliability as an informant.

Moreover, the Detective's effort to corroborate the information furnished by Cuellar–through a single instance of driving past the residence–confirmed no more information about the probable presence of evidence of criminal misconduct than could be observed by any third party from the curbside. For instance, the location of the home, the presence of vehicles used by Defendant, and the absence of any information about the interior of the home confirming Cuellar's prior visitation of the residence. Cuellar's assertion that Defendant had previously maintained drugs at his home, and that, therefore, drugs might in fact be located there at the time, could have been corroborated in any number of ways. For example, the Detective could have conducted a controlled purchase or simple surveillance of the residence for typical narcotics activity. Simply put, Cuellar's factual assertions were not corroborated in any material way.

The government also argues that, while Cuellar may not qualify as a citizen informant, the more rigorous standards applying to anonymous tipsters should not be applied in the instant case because Cuellar was identified in the affidavit. *See United States v. Miller*, 314 F.3d 265, 269-70 (6th Cir. 2002). In *Miller*, police received a tip from an identified informant that the defendant was growing large amounts of marijuana in his residence. *Id.* at 267. The informant stated that he had personally observed the growing operation while performing maintenance at the residence. *Id.* The next day, the informant returned to the defendant's residence and again observed the marijuana growing operation. *Id.* Within twenty minutes of observing the growing operation, the informant contacted police and explained that he observed a large quantity of marijuana. *Id.* At that point, the

officer corroborated the information by observing the residence and surrounding area with the informant, reviewing county records to determine the owner, and learning that the defendant's nickname was "Hippy." *Id.* The officer obtained and executed a search warrant the next day. *Id.* The search uncovered a growing operation along with extensive marijuana paraphernalia. *Id.*

The Sixth Circuit concluded that the warrant was supported by probable cause, despite the minimal corroborative efforts. *Id.* at 268-71. The court relied on the fact that the informant was not an "anonymous tipster" and identified in the affidavit. *Id.* at 269-70. Moreover, the court noted that the informant had personally observed the illicit activity within the previous twenty-four hours. *Id.* at 270 (*citing United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986)). Moreover, the informant provided additional detail that was "sufficiently detailed rather than being generalized or ambiguous," such as how he became aware of the information and the dates times of his observations. *Id.* at 271. Such detail bolstered his veracity, minimizing the necessity for extensive corroborative investigation. *Id.*

In the instant matter, this Court is unpersuaded that the identity of Cuellar in the affidavit mandates the same result as in *Miller*. Cuellar concededly was identified in the affidavit. That fact enhances his credibility because he would be subject to prosecution for fabricating such information. *Id.* at 270 (*citing Adams v. Williams*, 407 U.S. 143, 146-47 (1972)). Notwithstanding that fact, numerous material distinctions exist between the informant in *Miller* and Cuellar.

First, the *Miller* informant personally observed the growing operation twice, including within twenty minutes of notifying the police. He observed not only that the defendant possessed marijuana, but he also provided significant details regarding the forms of the drug, its specific location at the residence, and the fact that the marijuana was also being dried on the premises.

-11-

Moreover, the *Miller* informant provided additional contextual information that provided support for the veracity of the statements. Cuellar's statements, on the other hand, merely indicate that he was able to visit Defendant's residence to purchase heroin. His statements do not contain any personal observations, nor any detail associated with Defendant's trafficking, such as the location of the narcotics in the house or the extent of the operation. In the instant matter, Cuellar did not state when he had been to Defendant's residence. Cuellar statements were not as "sufficiently detailed" as the informant's statements in *Miller*, instead they were "generalized" and "ambiguous." *Id.* at 270.

Second, the *Miller* informant's information provides a clear temporal connection between his observation and the time the officer sought the search warrant. Despite his earlier observation, the *Miller* informant returned to the residence, confirmed his observations, and almost immediately informed the officer. Within twenty-four hours of the informant's observation, the officer undertook some corroborative investigation, produced a particularized affidavit, and executed the warrant. In the instant matter, it is entirely unclear when Cuellar "observed" drug activity at Defendant's residence. The only indication regarding time contained in the affidavit is that Cuellar had purchased heroin from Defendant for two months. Thus, Cuellar's statements did not indicate that his observations occurred in the "immediate past." *Id.* (quoting *Pelham*, 801 F.2d at 878).

Third, Cuellar was an acknowledged drug distributor and a criminal. The Detective's affidavit itself emphasizes this distinction by reciting the view that drug traffickers "routinely lie or provide false information to the police who may come into contact with them . . . " Dkt. # 16-2 at 3.

Fourth, the statement solicited from Cuellar was apparently received within hours of having

been taken into custody with serious felony charges being processed. Some courts have extended some belief of veracity to such statements, analogizing them to statements against penal interest. *See* Wayne R. LaFave, Search and Seizure § 3.3(c) (3d ed. 1996). Other courts, however, have been equally cautious in relying on statements from "the criminal caught red-handed" because they have less to fear and much to gain by cooperation. *Id.* Indeed, the treatise offers the following example:

> [I]f the police apprehended a person for possession of drugs and he were then to admit to purchases from various named sources in the recent past, there would be cause for skepticism. Such a generalized and unfocused set of allegations might well be nothing more than a series of falsehoods involving the names of several persons he has heard it rumored use or sell narcotics, for he could well anticipate that if the police act upon the information they will likely discover narcotics at some of the identified premises. The fact he did not "produce accurately" as to all of them, he might reason, can hardly be held against him, for these failures can be attributed to the passage of the unspecified time since he allegedly purchased and saw narcotics there.

*Id*.

Finally, the Detective apparently received Cuellar's statements at some point after Cuellar was arrested. Police "observed [Cuellar] sitting on the front porch of the residence and . . . in the process of 'shooting up' a quantity of heroin in a needle" when they executed a search warrant at a different location. Dkt. # 16-2. The search warrant executed at 3109 Ray Street was executed on the same day, May 24, 2007. Nothing in the affidavit removes the suggestion that Cuellar made his statements shortly after his arrest and when he remained under the influence of heroin. In short, Cuellar's factual assertions were insufficiently corroborated and the affidavit suggests no reason for the Detective's unquestioning reliance on Cuellar's veracity. The affidavit did not support a finding of probable cause.

IV

Having reached the conclusion that the warrant was not supported by probable cause, the

Court must also address Defendant's argument that the good faith exception addressed in *United States v. Leon*, 468 U.S. 897 (1984), does not apply. In *Leon*, the Supreme Court modified the exclusionary rule "so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at 900. The Court set forth the following four situations where the good faith exception is inapplicable:

> [F]irst, if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; second, if the issuing magistrate wholly abandoned his judicial role; third, if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or in other words, where the warrant application was supported by [nothing] more than a bare bones affidavit; and, fourth, if the warrant may be so facially deficient-i.e., failing to particularize the place to be searched or the things to be seized ...

*Weaver*, 99 F.3d at 1380 (*citing Leon*, 468 U.S. at 914-15, 923) (citations and quotations omitted). In the instant case, Defendant contends that "no reasonable officer would believe that the statements made by the informant here were trustworthy and reliable; therefore, no reasonable officer would believe that the affiant provided probable cause to search the residence at 3109 Ray [Street]." Dkt. # 16.

In determining whether the police "placed good faith, objectively reasonable reliance on the validity of the warrant," the Court must undertake two determinations. *Leake*, 998 F.2d at 1367. "The first is whether [the officer] acted in good faith. The second is whether [the officer's] reliance on the validity of the warrant was objectively reasonable, that is, 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (*quoting Leon*, 468 U.S. at 922). Defendant contends that the efforts undertaken by officers to corroborate Cuellar's statements were minimal and demonstrate that the good faith exception does

-14-

not apply. *See Weaver*, 99 F.3d at 1381.

In *Weaver*, the Sixth Circuit concluded that, despite the fact that the officer relied on information from a "previously reliable informant regarding possible criminal activity," his minimal corroboration demonstrated that his belief in the existence of probable cause was objectively unreasonable. *Id.* at 1380. As discussed above, the officer's basis of knowledge regarding the alleged drug trafficking came from the hearsay statements of a confidential informant. *Id.* at 1375. The officer did not undertake any meaningful corroborative investigation to independently verify the informant's "belief" that the defendant was engaged in a marijuana growing operation. *Id.* The Sixth Circuit concluded the officer's belief was not objectively reasonable, by noting that the officer:

> 1) possessed no prior personal knowledge of any unlawful activity by this suspect, or at the suspect residence . . . 2) possessed no present personal knowledge of any connection between this suspect and [narcotics] possession or distribution; 3) had not personally seen any [narcotics] at the suspect residence nor conducted any visual reconnaissance of the property to determine whether [narcotics were] likely to be present on the property; and 4) possessed only third-party hearsay information about a possible [narcotics] operation on the property.

*Id.* The same observations may be made in this case.

First, the warrant does not indicate that the Detective had any prior or present personal knowledge that Defendant possessed or distributed heroin from his residence. Likewise, the Detective did not observe narcotics on the premises and undertook modest surveillance efforts. Those efforts merely corroborated innocent facts and the presence of other people at the residence. Finally, Cuellar's statements provided the entire basis for his belief that Defendant had narcotics in his house. The fact that the Detective did not determine a source of information independent of Cuellar's statements substantiates the conclusion that his reliance was not in good faith and, thus, not subject to the *Leon* exception.

V

The warrant in the immediate case was not supported by probable cause.  The Detective's belief that the warrant contained sufficient facts to demonstrate probable cause was not objectively reasonable.

Accordingly, it is **ORDERED** that Defendant Terry Draper's motion to suppress  [Dkt. # 16] is **GRANTED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: April 11, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 11, 2008.

s/Tracy A. Jacobs  
TRACY A. JACOBS